Holly R. Gieszl (013845)
**THE GIESZL FIRM**
3200 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
Tel – 602-277-0772
holly@gieszlfirm.com

Counsel for Defendant

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TYLER PHELPS, an Unmarried Man,<br><br>    Plaintiffs,<br><br>v.<br><br>SOUTHWEST NETWORK, an Arizona Corporation; SOUTHWEST SAN TAN, an Arizona Corporation; CASE MANAGER JANE DOE; CLINICAL DIRECTOR JANE DOE; CLINICAL COORDINATOR JANE DOE; Jane and JANE DOES I-X; BLACK and WHITE /PARTNERSHIPS/ GOVERNMENT ENTITIES, I-X,<br><br>    Defendants. | Case Number: _____<br><br>**COMPLAINT** |

By and through counsel undersigned, and for their claims against Defendants, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.  This court has federal question jurisdiction over Plaintiff Tyler Phelp's ("Mr. Phelps") claims under 28 U.S.C. § 1331 and brought pursuant to 42 U.S.C. § 1983.

-1-

2. This court has Supplemental jurisdiction under 32 U.S.C. § 1367 over each Plaintiff's state law claims.

3. Venue is appropriate in this court because at all times relevant, Mr. Phelps and each of the individual defendants were residents of Maricopa County.

## THE PARTIES

4. Plaintiffs incorporate by reference each of the above-numbered paragraphs as if fully repeated here.

5. At all times material to this action, Mr. Phelps was an individual deemed to be seriously mentally ill ("SMI") as defined in A.R.S. § 36-500(4), and enrolled through Arizona's Medicaid program, the Health Care Cost Containment Program ("AHCCCS") for psychiatric treatment, including medication, services such as case management, treatment including counseling and therapy and other services such as peer support and assistance with housing.

6. At all times material to this action, Defendant Southwest Network ("Southwest") was an Arizona corporation authorized to do business in, and doing business in Maricopa County, Arizona, by providing behavioral health care services for individuals designated as SMI, and employing employees and agents to provide these services, under a contract with Mercy Care, Arizona's Regional Behavioral Health Authority for Central Arizona ("Mercy-RBHA").

7. Defendant Southwest San Tan ("San Tan"), is a licensed outpatient clinic owned by Southwest, and at all times relevant provided services to Mr. Phelps as an individual designated as SMI.

8. Clinical Director Jane Doe is the individual who served as the Clinical Director at San Tan from August 22, 2019 until December 31, 2019.

9. Clinical Coordinator Jane Doe is the individual who served as the Clinical Supervisor at San Tan from August 22, 2019 until December 31, 2019.

10. Case Manager Jane Doe was Mr. Phelps' case manager at San Tan from August 22, 2021 until December 31, 2019.

11. Defendants John and Jane Does I-X and Black and White Corporations/Partnerships/Government Entities I-X, at all times mentioned, were residents of Maricopa County and were persons, agents, servants, employees, corporations and/or business entities whose true names and identities are not presently known to Plaintiff. Each of these defendants provided or failed to provide services to Plaintiff. At such time as any of these true names are ascertained, Plaintiff will seek leave of this Court to amend Plaintiff's Complaint to reflect the true identities of these individuals and/or entities, together with the appropriate allegations.

**FACTS APPLICABLE TO ALL ACCOUNTS**

12. Plaintiffs incorporate by reference each of the above-numbered paragraphs as if fully repeated here.

-3-

13. At all times mentioned, Mr. Phelps was an enrolled member in Arizona's Medicaid program, the Arizona Health Care Cost Containment System ("AHCCCS") and, also, designated as seriously mentally ill ("SMI") under A.R.S. § 36-500(4).

14. Designation of an individual for SMI status requires that the individual has both a "qualifying diagnosis" with one or more mental illnesses and, also, meets "functional criteria" for dysfunction, including: (a) inability to live in an independent or family setting without supervision; (b) seriously disruptive to family and/or community; (c) dysfunction in role performance at work or school; and (d) risk of deterioration from the qualifying diagnosis with probable chronic, relapsing, and remitting course.

15. Mr. Phelps' qualifying diagnosis was schizophrenia (with paranoia, auditory and visual hallucinations and delusions). He was considered "functionally dysfunctional" because of the severe nature of his schizophrenia, including risk of deterioration and a probable chronic, relapsing, and remitting course of illness.

16. As an AHCCCS member --- an enrolled individual designated as SMI --- Mr. Phelps was eligible for, and his providers, Defendants Southwest and San Tan were required and paid to provide, a specific set of comprehensive set of behavioral health services.

17. SMI is a "designation as defined in A.R.S. § 36-550 and determined in an individual 18 years of age or older." ACCESS Policy Manual, Section 320. 320P.pdf (azahcccs.gov). A.R.S. § 36-550(4).

18. AHCCCS mandated services include" medication and medication administration, psychiatric services, counseling, therapy, case management, follow-up, coordination of care with other providers and the justice system, and housing services.  This menu of services was designed and  intended to facilitate recovery from mental illness so the person can live and work in the community with supports, rather than be institutionalized.

19. "A critical component of the AHCCCS delivery system is the effective and efficient identification of individuals who have behavioral health needs due to the severity of their behavioral health disorder. One such group is individuals designated to have a SMI. Without receipt of the appropriate care, these individuals are at high risk for further deterioration of their physical and mental condition, increased hospitalizations and potential homelessness and incarceration."  AHCCCS Policy Manual, Section 320, 320-P - Page 2 of 10,  320P.pdf (azahcccs.gov).

20. Since 1982, Arizona operated its federally subsidized "Medicaid" program, the Arizona Health Care Cost Containment Cost Containment System ("AHCCCS"), to provide services, including mental health services, to qualified individuals, including at all times metioned, Mr. Phelps.

21. For individuals designated with serious mental illness ("SMI"), the AHCCCS contracts with three private companies --- each known as a Regional Behavioral Health Authority ("RBHA") --- who then contract with providers for the provision of SMI services to qualified individuals, including Tyler. Each RBHA fulfills the traditional role of the State in contracting with providers, paying providers, and providing oversight of how providers' perform under their contract and how they treat members.

22. Since 2014, the RBHA for central Arizona has been Mercy Care, Inc., ("Mercy RHBA").

23. AHCCC pays most contracted providers on a "capitation" aka "per capita" basis. This includes Defendants SOUTHWEST and San Tan, who are under contract with and paid by Mercy RBHA to provide services to SMI designated individuals, including Mr. Phelps.

24. In theory, payment on a capitation basis incentivizes providers to be efficient in the provision of services. However, if a provider fails to operate efficiently, the provider also may be incentivized not to provide all required services or to delay services, often through the use of unqualified or unsupervised staff, or to employ too few staff.

25. Oversight of contracted providers' delivery of services is an important part of Mercy RBHA's role as the contracted entity administering Arizona's Medicaid program. Mercy operates a Grievance System, which investigates grievances

-6-

submitted by members or others, such as parents, individuals holding a power of attorney or legal Guardians, on behalf of a member.

26. Mercy RBHA's grievance system investigates allegations, in part, under the provisions of the Arizona administrative code that sets out the legal rights of enrolled members designated as SMI.

27. As a person with serious mental illness, Mr. Phelps was disabled under §35.108(a)(i) of the ADA, which defines "disability" as a physical or mental impairment that substantially limits one or more of the major life activities of such individual. Section §35.108(b)(a)(ii) of the ADA explains that "Physical or mental impairment means any mental or psychological disorder" including "emotional or mental illness".

28. Due to the severity of Mr. Phelps' mental illness, and his resulting inability to keep his monthly appointments or manage his medications, San Tan petitioned the Maricopa County Superior Court, Probate Court under A.R.S. §36-533 for a court order for Mr. Phelps to receive monthly injections of INVEGA, a medication that is used for management of schizophrenia.

29. Use of court ordered treatment, which permits a treatment team to act under color of law and "force" treatment on an individual with SMI, is a last resort in the provision of services to individuals living with SMI. However, it is an essential component of providing effective services to individuals living with SMI, and it is an

-7-

essential way to keep protect individuals like Mr. Phelps who are treatment resistant and medication nonadherent, particularly when the medication is an anti-psychotic.

30. Mr. Phelps had been designated SMI for about one year when his treating physician, Dr. Pierre Tariot decided to discontinue Mr. Phelps' INVEGA injections in July of 2019. Mr. Phelps soon began to deteriorate.

31. The first time that anyone knew of Mr. Phelps' deteriorating state due to discontinuation of his medication, was August 22, 2019. Community Bridges, an urgent care facility serving individuals experiencing a psychiatric crisis, contacted Mr. Phelps' treatment team at San Tan to come and pickup Mr. Phelps at discharge. The purpose of this kind of "warm hand-off" is to prevent exactly what happened next: when San Tan did not show up and Mr. Phelps, left, he disappeared to the streets.

32. During the next few months, Mr. Phelps – and his mother, Mrs. Phelps' – endured pure torment and misery.

33. Mr. Phelps was in a psychotic state, wandering around the streets, homeless, paranoid and living in an alternative universe driven by hallucinations and delusions. He was arrested several times; jailed; he lost his job; he lost his apartment; he lost his car. He was fired from his job due to his erratic, threatening behavior. Once homeless, he wandered the streets in a psychotic state, sleeping wherever he could, without money for food or clothing, and in an increasingly psychotic state.

34. And most tragically, he lost custody of his young son. Due to his prolonged psychotic break, Mr. Phelps suffered additional permanent psychiatric damage that is not remediated by the resumption of treatment, including a change of medication.

35. Mrs. Phelps was beyond "worried". She desperately tried to find her son. She made frequent calls to San Tan, all to no avail. Most of her calls were never returned. Staff who did communicate with Ms. Phelps refused to listen to what she was telling them about her son's suffering and deterioration, including his ongoing psychosis, non-stop hallucinations (auditory and visual), and his delusions. They demonstrated utter lack of concern as to Mr. Phelps whereabouts. They refused to communicate with Mrs. Phelps, who was desperately trying to alert the clinic that something was wrong and begging them to find her son. They ignored her.

36. San Tan staff even told Ms. Phelps that under the Health Insurance Portability Accountability Act ("HIPAA"), they not could not even listen to information that Mrs. Phelps had about Tyler and was trying to share with them. There is no such provision in HIPAA.

37. Eventually, in late 2019, Tyler was located and re-entered treatment, although he will never be the same due to months of no treatment and the traumas he experienced during that time.

38. After Mr. Phelps was safe and stable, in January of 2020, Mrs. Phelps filed a Grievance with the Mercy Grievance Department. Mercy Grievance investigated,

-9-

and on September 3, 2020, issued its "SMI Grievance Decision After Investigation" ("Grievance Decision"). A copy is attached as Exhibit 1 to this Complaint.

39. The Grievance Decision noted a series of serious improper acts, each of which undermined the very concept of treatment for individuals living with SMI, including:

   A. Failure to respond to the call from Community Bridges on August 22, and 2019;

   B. Failure to provide follow-up with Mr. Phelps after the call from Community Bridges on August 22, 2019;

   C. Failure to respond on August 26, 2019 to Mr. Phelps' request for housing assistance due to an impending eviction;

   D. Failure to follow-up and to re-engage Mr. Phelps after he missed his appointment on August 29, 2019;

   E. Failure to follow-up in any manner and re-engage Mr. Phelps through phone calls or home visits to find and re-engage Mr. Phelps after he missed another appointment on September 9, 2019;

   F. Mr. Phelps went back into police custody in late September and October. San Tan was notified … and did nothing. No outreach, no attempt to re-engage.

40. The Grievance Documents further concluded that these acts constituted a violation of the Arizona Administrative Code R9-21-202, specifically, violation of Mr. Phelps right to behavioral services provided in a way that "ensures freedom

-10-

from discomfort, distress, and deprivation that arise from an unresponsive and inhumane environment. "

41.     The Grievance Decision concluded: "Based upon a preponderance of the evidence, the clinical documentation proves a lack of coordination of care, and neglect to provide support and treatment to Mr. Phelps … "

**COUNT ONE**
**AMERICANS WITH DISABILITIES ACT; REHABILITATION ACT**
**(All Defendants)**

42.     Mr. Phelps incorporates by reference each of the above-numbered paragraphs as if fully repeated here.

43.      Mr. Phelps is a "qualified individual" with a disability that limits one or more major life activities under 42 U.S.C. § 12132 of the ADA.

44.     As a recipient of federal financial assistance through AHCCCS, Southwest and San Tan must ensure meaningful access by the Plaintiff to mental health services pursuant to Section 504 of the Rehabilitation Act.

45.     As set forth in the Grievance Decision, Exhibit 1, from August 22, 2021 forward for some three months, Defendants San Tan and each of its employees failed in multiple ways to provide Mr, Phelps with any access to any services, much less "meaningful" access .

46.     Title II of the ADA, 42 U.S.C. § 12132, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity").

47. Title II's implementing regulations, 28 C.F.R. § 35.130.(d), state that "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities".

48. As set forth in the Grievance Decision, Defendants Southwest Network and San Tan failed in multiple ways to provide services, and for that reason, Mr. Phelps was arrested, hospitalized and incarcerated.

49. Each of the failures of San Tan and its employees caused Mr. Phelps numerous injuries including permanent worsening of his psychiatric condition, pain, suffering, and misery as well as loss of his job and all of his worldly possessions.

## COUNT TWO
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

50. Mr. Phelps incorporates by reference each of the above-numbered paragraphs as if fully repeated here.

51. As set forth above and as established under Arizona common law, each of the Defendants intentionally inflicted emotions distress on Mr. Phelps as follows:

(i) Each Defendant's conduct was extreme and outrageous as evidenced by the fact that their conduct caused Mr. Phelps "discomfort, distress and deprivation" in an "unresponsive and inhuman environment."

      (ii)    Each Defendant recklessly disregard the near certainty that emotional distress would result from his conduct; and

      (iii)    Mr. Phelps experienced severe emotional distress must as the result of each defendant's conduct.

52. Each Defendant conduct caused Mr. Phelps' intense suffering and injuries.

53. Defendants Southwest and San Tan are vicariously liable under the theory of respondeat superior for the acts and omissions of its employees who cause Mr. Phelps' injuries and damages.

54. As a proximate result of these negligent acts and omissions, Mr. Phelps suffered permanent and significant injuries and damages.

**COUNT THREE**
**NEGLIGENCE**
**(SOUTHWEST AND SAN TAN)**

55. Plaintiff incorporates all allegations contained in each of the above-numbered paragraphs as if fully set forth here.

56. Defendants Southwest and Mercy Care had a duty to provide services to individuals designated SMI in a reasonable manner, in keeping with the applicable standards of care, including in particular, having a duty to ensure that proper procedures were followed to protect the safety of patients like Mr. Phelps who are under court-ordered treatment and missing appointments.

57. Defendants Southwest and San Tan breached their duties as set forth in the Greivance Determination in Exhibit 1 by failing to provide case management, failing

-13-

to provide follow-up, failing to respond to Community Bridges or calls form law enforcement and jails.

58. As a proximate result of these negligent acts and omissions, Mr. Phelps suffered permanent and significant injuries and damages.

## COUNT FOUR
### NEGLIGENT HIRING, TRAINING, AND SUPERVISION
**(Defendants Southwest and San Tan)**

59. Mr. Phelps incorporates by reference each of the above-numbered paragraphs as if fully repeated here.

60. Defendants Southwest and San Tan had a duty to act in a reasonable and responsible manner when it hires, trains and supervises their respective employees.

61. Defendants Southwest and San Tan breached their duty by hiring employees who were not properly educated, or credentialed to act in their assigned roles, including as behavioral health technicians, case managers, as a clinical coordinator or as a clinical director.

62. Defendants Southwest and Mercy Care breached their duty by failing to provide their employees with adequate training and/or supervision at the expense of their members and the community. Specifically, Defendants failed to train and/or supervise their employees on a plethora of actions in case management, including: follow-up and re-engagement when a member misses an appointment; follow-up and pick up when a patient is seen at a crisis center like Community Bridges; and follow-up and

-14-

coordination of care when a member is at a crisis center or in jail or calls for help due to an impending eviction.

63. Defendants Southwest's and San Tan's failures to adequately supervise and train the individuals who provided Jane Doe Clinical Diorector to undergo remedial education and training regarding outreach, engagement, re-engagement, coordination of care, and documentation in medical records.

64. It was reasonably foreseeable to Defendants that a member such as Mr. Phelps who was off his injectable medication and missed his appointments would likely suffer deterioration and experience pain, suffering, and significant harm from homelessness and job loss.

65. As a proximate result of these negligent acts and omissions, Mr. Phelps suffered permanent and significant injuries and damages

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

A. For all damages under applicable state and federal law including, including, but not limited to, compensatory damages, consequential damages, special damages, consortium damages, punitive damages, and general damages, in an amount to be proven at trial.

)

)

Respectfully submitted this 22nd day of September 2021.

**THE GIESZL FIRM**

By */s/Holly R. Gieszl*
    Holly R. Gieszl
    3200 N. Central, Ste. 1500
    Phoenix, Arizona 85012
    *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of September 2021, I electronically filed the foregoing document using the ECF system of the United States District Court.

/s/ Holly R. Gieszl